# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## No. 25-60278

### BARBIE BASSETT,
**Plaintiff - Appellant**

**v.**

### GRAY MEDIA GROUP, INCORPORATED, D/B/A WLBT-TV
**Defendant - Appellee**

### BRIEF OF APPELLEE

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

M. Kimberly Hodges
MS Bar No. 100276
kim.hodges@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6410 Poplar Avenue, Suite 300
Memphis, Tennessee 38119
Telephone: (901) 767-6160
Facsimile: (901) 767-7411

ATTORNEYS FOR DEFENDANT-
APPELLEE

## ORAL ARGUMENT NOT NECESSARY

# CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record, certifies that the following listed persons and entities have an interest in the outcome of this litigation. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

1.  Barbie Bassett, Plaintiff-Appellant;

2.  Gray Media Group, Inc., d/b/a WLBT-TV, (currently known as Gray Local Media, Inc.) Defendant-Appellee;

3.  Jim Waide, attorney for Plaintiff-Appellant;

4.  Rachel Pierce Waide, attorney for Plaintiff-Appellant;

5.  Yance Falkner, attorney for Plaintiff-Appellant;

6.  Waide & Associates, P.A., counsel for Plaintiff-Appellant;

7.  M. Kimberly Hodges, counsel for Defendant-Appellee;

8.  Caleb Hand, counsel for Defendant-Appellee;

9.  Ogletree Deakins, counsel for Defendant-Appellee.

SO CERTIFIED, this 14th day of November, 2025.

Respectfully submitted,

*/s/ M. Kimberly Hodges*
M. Kimberly Hodges
Counsel for Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Gray Media Group, Inc., d/b/a WLBT-TV respectfully submits that oral argument is unnecessary because this case presents no novel or complex issues of either fact or law.  The issues involved can be easily resolved based upon the briefs and record.  The decisional process would not be significantly aided by oral argument.  *See* Fed. R. App. P. 34(a)(1).

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ............................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................... ii

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................. v

JURISDICTIONAL STATEMENT ..................................................... viii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................ viii

STATEMENT OF THE CASE ............................................................... 1

    1.  Procedural Background ................................................................. 1

    2.  Factual Background ...................................................................... 1

        A.   Bassett Receives a Warning Letter for Making Racially Inappropriate Comments During an On-Air Broadcast .................................. 2

        B.   Less Than Six Months Later, Bassett Again Uses a Racially Inappropriate Term During an On-Air Broadcast .................................. 4

SUMMARY OF THE ARGUMENT ...................................................... 6

STANDARD OF REVIEW ................................................................... 6

ARGUMENT ...................................................................................... 8

    I.   The District Court Correctly Applied the *McDonnell Douglas* Burden-Shifting Analysis and Fifth Circuit Precedent ......................... 8

    II.   The District Court Correctly Found Bassett Failed to Produce Competent Summary Judgment Evidence of Pretext or Mixed Motive .................... 9

A.    The District Court Found Bassett Met Her *Prima Facie* Burden and that WLBT Satisfactorily Articulated a Legitimate Non-Discriminatory Reason for Her Termination .................................. 9

B.    Bassett Has No Competent Evidence of Pretext ........................... 11

C.    Bassett Produced No Competent Evidence That Her Race Was a Motivating Factor in Her Termination ........................................... 12

CONCLUSION ..................................................................................................... 20

CERTIFICATE OF SERVICE ............................................................................. 21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS .......... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................7

*Anderson v.* Office Depot, Inc.,
   No. 3:08-cv-288, 2009 WL 1116306 (S.D. Miss. Apr. 24, 2009).....................16

*Anderson v. Office Depot Inc.*,
   360 F. App'x 553 (5th Cir. 2010) ........................................................16

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) ...............................................................7

*Bienkowski v. Am. Airlines, Inc.*,
   851 F.2d 1503 (5th Cir. 1988) .......................................................16, 20

*Bryan v. Compass Group USA Inc.*,
   413 F.3d 471 (5th Cir. 2005) ....................................................*passim*

*Burnice v. CoreCivic of Tennessee, LLC*,
   No. 22-60183, 2022 WL 17415002 (5th Cir. Dec. 5, 2022) ...............................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................6, 7

*Davis v. Chevron USA, Inc.*
   14 F.3d 1082, 1087 (5th Cir. 1994.....................................................9

*Desert Palace, Inc. v. Costa*,
   539 U.S. 90 (2003)..........................................................................12

*E.E.O.C. v. Rite Way Serv., Inc.*,
   819 F.3d 235 (5th Cir. 2016) .............................................................6

*Eason v. Thaler*,
   73 F.3d 1322 (5th Cir. 1996) ...........................................................7

*Ernst v. Methodist Hosp. Sys.*,
   1 F.4th 333 (5th Cir. 2021) .........................................................9, 10

*Etienne v. Spanish Lake Truck & Casino Plaza, LLC*,
    778 F.3d 473 (5th Cir. 2015) ...................................................................9

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) ...................................................................7

*George v. Kramo Ltd.*,
    796 F. Supp. 1541 (E.D. La. 1992)........................................................7

*Jackson v. Cal-W. Pkg. Corp.*,
    602 F.3d 374 (5th Cir. 2010) .................................................................17

*Jones v. Gulf Coast Restaurant Grp., Inc.*,
    8 F.4th 363 (5th Cir. 2021) ...................................................................12

*Kitchen v. BASF*,
    952 F.3d 247 (5th Cir. 2020) .................................................................15

*LaMaire v. La. Dep't of Transp. & Dev.*,
    480 F.3d 383 (5th Cir. 2007) .................................................................15

*Lavigne v. Cajun Deep Founds., LLC*,
    654 F. App'x 640 (5th Cir. 2016)...........................................................18

*Laxton v. Gap Inc.*,
    333 F.3d 572, 578 (5th Cir. 2003) .........................................................11

*Little v. Republic Refining Co.*,
    924 F.2d 93, 97 (5th Cir. 1991) .............................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574 (1986)..................................................................................7

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).........................................................................*passim*

*Owens v. Circassia Pharms., Inc.*,
    33 F.4th 814 (5th Cir. 2022) ..................................................................15

*Rachid v. Jack in The Box, Inc.*,
    376 F.3d 305 (5th Cir. 2004) .................................................................11

*Rios v. Rossotti,*
   252 F.3d 375, 382 (5th Cir. 2001) ....................................................18

*Rishel v. Nationwide Mut. Ins. Co.,*
   297 F. Supp. 2d 854, 865 (M.D.N.C. 2003) .....................................11

*Russell v. McKinney Hosp. Venture,*
   235 F.3d 219 (5th Cir. 2000) .............................................................8

*Sreeram v. Louisiana State Univ. Med.,*
   188 F.3d 314 (5th Cir. 1999) ...........................................................19

*Story v. Gibson,*
   896 F.3d 693, 698 (5th Cir. 2018) ...................................................10

*Watkins v. Tregre,*
   997 F.3d 275, 283 (5th Cir. 2021) ...................................................12

*Willis v. Cleco Corp.,*
   749 F.3d 314 (5th Cir. 2014) ...........................................................11

**Statutes and Rules**

28 U.S.C. § 1291 ................................................................................ viii

28 U.S.C. § 1331 ................................................................................ viii

28 U.S.C. § 1332 ................................................................................ viii

FED. R. CIV. P. 56 ................................................................................. 6

**Other Authorities**

KIMBERLY WALLACE-SANDERS, MAMMY: A CENTURY OF RACE, GENDER, AND
   SOUTHERN MEMORY (2008). ...............................................................3

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and/or 1332. This Court has appellate jurisdiction over an appeal from a grant of summary judgment of the district court under 28 U.S.C. § 1291. The notice of appeal was filed on May 30, 2025. ROA.1145-1146[1].

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the district court correctly granted Defendant-Appellee Gray Media Group, Inc. d/b/a WLBT-TV's motion for summary judgment where Plaintiff-Appellant Barbie Bassett failed to produce competent summary judgment evidence sufficient to demonstrate a material issue of fact as to either pretext or a mixed motive.

---

[1] Citations to ROA reference the Electronic Record on Appeal.

## STATEMENT OF THE CASE

1.    <u>Procedural Background</u>

Barbie Bassett ("Bassett") filed her complaint in the United States District Court for the Southern District of Mississippi on December 13, 2023, alleging race and age discrimination and seeking a declaration that her non-competition agreement was void.  <u>ROA.9-7</u>.  Gray Media, Inc., d/b/a WLBT-TV ("WLBT") filed its motion for summary judgment on January 14, 2025, which was argued before District Judge Daniel P. Jordan, III on May 1, 2025.  <u>ROA.119-534</u>, <u>ROA.1162-1208</u>.

On May 19, 2025, Judge Jordan issued his Order granting WLBT's motion for summary judgment and later entered judgment on May 19, 2025.  <u>ROA.1123-1144</u>.  Bassett's notice of appeal to this Court followed on May 20, 2025.[2] <u>ROA.1145-1146</u>.

2.    <u>Factual Background</u>

WLBT employed Bassett in various capacities from 1999 through her termination in 2023.  <u>ROA.10</u>, <u>ROA.31</u>, <u>ROA.145-148</u>.  In October 2021, WLBT hired Bassett as a co-anchor on its "Today at 11" show.  <u>ROA.10</u>, <u>ROA.31</u>, <u>ROA.148</u>.  At the time she was hired, Bassett's direct supervisor was Mark Little, the news director, who, in turn reported to the station's general manager, Ted

---

[2] Bassett conceded her age discrimination claim in response to WLBT's motion for summary judgment, and did not appeal the district court's order as to her non-competition agreement.

Fortenberry.  ROA.148-150.  Mark Little was later replaced by news director Charles ("Charlie") Jones, who also reported to Ted Fortenberry.

While she had trouble articulating her specific duties as a co-anchor, Bassett admits it is important for an anchor to be truthful, respectful, and to exercise a high standard of conduct.  ROA.163-164.  One of Bassett's colleagues, long-time anchor Maggie Wade-Dixon similarly described the job as being "all about credibility and trust."  ROA.737-738.

> A.  Bassett Receives a Warning Letter for Making Racially Inappropriate Comments During an On-Air Broadcast.

The Today at 11 show "lended [sic] itself to more banter."  ROA.212.  On October 28, 2022, Bassett was engaged in some on-air banter with Carmon Poe, a field reporter assigned to cover the Jackson State University ("JSU") football game as well as ESPN's Gameday coverage.  ROA.166-169.  Ms. Poe is African American, and the JSU game and related ESPN coverage brought a lot of people (and attention) to the Jackson, Mississippi area.  ROA.166-167.  During their banter, Bassett asked Ms. Poe who she thought the ESPN celebrity Gameday picker would be.  ROA.166-167.  Bassett then—on live television—"suggested to [Ms. Poe] what she should do was to ask her grand mammy [. . .] to bake a chocolate pie or a pecan pie [. . .] and see if you could coax from the Gameday people behind you who the Gameday celebrity is going to be."  ROA.169.

The negative reaction to Bassett's "grand mammy" comment was immediate. Patrick Ellis, a meteorologist on the show, told Bassett "I can't believe you just said grand mammy." ROA.174. Several other of WLBT's employees informed Bassett the term was racially insensitive and offensive. ROA.174-176. In the days following Bassett's "grand mammy" comment, she learned the public was offended by her conduct. ROA.176-177. WLBT likewise received numerous complaints from its viewers regarding Bassett's racially offensive language. ROA.391-393, ROA.313-314. Bassett indicated to General Manager Fortenberry and News Director Charlie Jones that she wanted to make an on-air apology for her conduct. ROA.177-178. Although Bassett does not regret the exchange with Ms. Poe (because she says she did not have any ill intent), she made the on-air apology. ROA.179, ROA.189-190.

In response to Bassett's on-air conduct, Jones issued her a written warning on November 10, 2022. ROA.185-186, ROA.298-299, ROA.321-322, ROA.393-395. In the written warning, WLBT informed Bassett "[t]he term gran mammie is a negative depiction used during slavery to refer to an African American Grandmother. The comment was insensitive and inappropriate during the newscast." ROA.298-299, ROA.334; *see generally* KIMBERLY WALLACE-SANDERS, MAMMY: A CENTURY OF RACE, GENDER, AND SOUTHERN MEMORY (2008).

The written warning informed Bassett "[a]ny other performance or behavior that is deemed unacceptable will lead to termination of employment." ROA.298. Bassett disagrees she should have been disciplined for using the term, as she did not intend to offend anyone. ROA.190-193. Although she agrees WLBT has a responsibility to represent its viewers, Bassett simultaneously claims "[i]f the viewers don't agree, they can change the channel." ROA.195.

    B.   <u>Less Than Six Months Later, Bassett Again Uses a Racially Inappropriate Term During an On-Air Broadcast</u>.

On March 8, 2023, Bassett was engaged in another on-air banter session following a story about celebrity performer Snoop Dogg's new line of wines. ROA.198. During the banter, Bassett, in responding to a comment made by a co-anchor, said "fo shizzle, my nizzle." ROA.198-199.

Again, the negative reaction to Bassett's comment was immediate. Bassett's co-worker Patrick Ellis said to Bassett "I can't believe you just said the 'N word' on live TV." ROA.200. News Director Jones and General Manager Fortenberry reached similar conclusions about the meaning of Bassett's statement. ROA.329, ROA.415. In the days and weeks following the incident, the story of Bassett's on-air comment was picked up by national news. ROA.206-207. Bassett expressed no regret for using the term, and in her deposition posed a hypothetical: "[w]hy would Snoop Dogg himself say that if it were such an offensive word?" ROA.204, ROA.209.

After this incident, Jones asked Bassett to attend a meeting. ROA.211. Bassett initially believed the meeting would be "another discussion about don't say a word that some people may see as offensive." ROA.211. It was not. Instead, Jones asked Bassett if she would be willing to resign. ROA.211. Bassett indicated she was unwilling to resign and suggested she be moved to a show with less banter. ROA.212.

At the close of the meeting, Jones made Bassett two offers: either resign, sign a waiver, and accept severance payments; or be involuntarily discharged. ROA.212-213. Bassett chose the latter and was discharged on or around March 14, 2023. ROA.213-214. WLBT discharged Bassett because she used racially offensive language on-air—twice. ROA.333-334, ROA.422-423.

WLBT began a search for Bassett's replacement, and initially offered the job to Ashley Bowerman, who is white. ROA.244, ROA.441-442. Bowerman turned the offer down, and WLBT continued its search. ROA.442. Bassett was ultimately replaced by an African American employee, Samantha German. ROA.440. German was not part of the initial pool of candidates WLBT considered for Bassett's replacement and was only selected after Bowerman declined WLBT's offer. ROA.441-442.

## SUMMARY OF THE ARGUMENT

This is a straightforward and simple case in which a WLBT anchor was terminated for twice making racially offensive comments during an on-air broadcast within a six-month period, despite having been issued a warning letter after the first instance. Bassett was not terminated because of her race.  She was terminated because she failed to correct her behavior after having been given an opportunity to do so.

The district court correctly applied the *McDonnell Douglas* standard and found Bassett failed to produce competent evidence sufficient to carry her burden on summary judgment.  This Court should therefore affirm the district court's judgment in all respects.

## STANDARD OF REVIEW

This Court reviews a district court's summary judgment ruling *de novo*, "applying the same standard as the district court in the first instance." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016); *Burnice v. CoreCivic of Tennessee, LLC*, No. 22-60183, 2022 WL 17415002, at *2 (5th Cir. Dec. 5, 2022). Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment if it can show that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A dispute regarding a material fact is "genuine" if the

evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has shown that there is no evidence to support the nonmoving party's case, the nonmoving party must come forward with competent evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask that the party 'put up or shut up.'" *George v. Kramo Ltd.*, 796 F. Supp. 1541, 1545 (E.D. La. 1992); *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Mere conclusory allegations are not competent evidence and cannot defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Further, unsubstantiated assertions, improbable inferences, and unsupported speculation are also insufficient to defeat a motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential of its case and on which it will bear the burden of proof at trial, summary judgment must be granted to the moving party. *Celotex*, 477 U.S. at 322-23.

# ARGUMENT

## I.   The District Court Correctly Applied the *McDonnell Douglas* Burden-Shifting Analysis and Fifth Circuit Precedent.

In her opening brief Bassett dedicates much of her argument to her assertion that the district court erred in using the traditional *McDonnell Douglas* standard to analyze her claims.  Yet in doing so, she ignores and fails to correct her most glaring deficiency—a complete lack of actual evidence of race discrimination.  The district court correctly analyzed the claims in this case under the *McDonnell Douglas* standard, as repeatedly articulated by this Court.  However, even if that had not been so, Bassett's claims still would not have survived summary judgment because she has presented nothing more than unsubstantiated assertions, improbable inferences, and unsupported speculation, which are insufficient to defeat summary judgment under any standard.

Bassett presented her case to the district court through circumstantial evidence; therefore, Judge Jordan properly applied the burden-shifting analysis in *McDonnell Douglas*, which has long been adopted by the Fifth Circuit.[3]  *See Russell*

---

[3] Bassett argues her evidence should not have been categorized as either direct or circumstantial. As explained, she cannot survive summary judgment under a circumstantial evidence analysis. However, she also could not have survived summary judgment under a direct evidence standard, even if she had properly produced any or argued it below.  This is because the "direct evidence" she now claims to have is nothing more than an incomplete and generalized answer in Ted Fortenberry's deposition.  This quotation was a general response to a general question, and was not directed to Bassett's employment termination.  A proper reading of the full testimony shows clearly that Fortenberry stated on-air comments such as the ones Bassett made are inappropriate no matter the employee's race.

*v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir. 2000). As the district court noted, "Bassett argues that this analysis no longer applies, but she fails to support her position with applicable law." ROA.1128. The same is true here.

This Court is firm in its position that the *McDonnell Douglas* standard "must" be followed in Title VII cases supported by circumstantial evidence. *See Etienne v. Spanish Lake Truck & Casino Plaza, LLC,* 778 F.3d 473, 475 (5th Cir. 2015) (citing *Davis v. Chevron USA, Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994)). Bassett provides no applicable law or legitimate basis to support use of a different standard to analyze her claims. As such, the district court correctly applied the Fifth Circuit's clear precedent in analyzing Bassett's claims.

## II.    The District Court Correctly Found Bassett Failed to Produce Competent Summary Judgment Evidence of Pretext or Mixed Motive.

### A.    The District Court Found Bassett Met Her *Prima Facie* Burden and that WLBT Satisfactorily Articulated a Legitimate Non-Discriminatory Reason for Her Termination.

A Title VII plaintiff must first state a *prima facie* case under the *McDonnell Douglas* framework. To do so, Bassett must provide evidence that: (1) she belongs to a protected group; (2) she was qualified for the position at issue; (3) she was discharged or suffered an adverse employment action; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly-situated employees outside her protected group. *See Ernst v. Methodist*

*Hosp. Sys.,* 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Story v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018)).

Because WLBT conceded the first three elements, the district court focused on Bassett's evidence of the fourth element *i.e.*, whether Bassett demonstrated she was replaced by someone outside her protected class. ROA.1129-1130. But the undisputed evidence showed WLBT initially offered Bassett's position to a white applicant. ROA.244, ROA.441-442, ROA.1130. The district court helped Bassett clear this hurdle by ignoring WLBT's initial offer to a white candidate; finding the fact Bassett was ultimately replaced by a black employee sufficient to meet her fourth element, while noting the overall weakness of her *prima facie* case. ROA.1129-1130, ROA.1140-1141 ("As noted, [Bassett's] claim would likely fail at the *prima facie* stage had the Court applied the work-rule-violation test.").

After finding that Bassett had at least arguably articulated a *prima facie* case, the district court reviewed WLBT's legitimate, non-discriminatory reason for Bassett's termination. ROA.1130. WLBT terminated Bassett because she used racially offensive language on air twice, the second comment occurring less than six months after she had been issued a warning letter for the first. ROA.1130. Recognizing there was no dispute Bassett made the on-air statements, and no dispute that her comments generated complaints from viewers and employees, the district

court correctly found that WLBT met its burden of production at this stage of the analysis.  ROA.1130.

In an attempt to survive summary judgment despite her lack of proof, Bassett claims that her case is a "mixed-motive" case, requiring application of the Fifth Circuit's modified *McDonnell Douglas* approach.  If so, once WLBT met its burden of production in articulating a legitimate, non-discriminatory reason for terminating Bassett, she "'must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative).'"  *Rachid v. Jack in The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

Whether a mixed-motive analysis is appropriate or not, Bassett cannot survive summary judgment because she has presented no evidence that WLBT's reason for her termination is false, or that her race was a motivating factor in her termination.

## B.    Bassett Has No Competent Evidence of Pretext.

To show pretext, Bassett must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (quoting *Laxton v. Gap Inc.*,

333 F.3d 572, 578 (5th Cir. 2003).  "Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or 'unworthy of credence'—that it is 'not the real reason for the adverse employment action.'"  *Jones v. Gulf Coast Restaurant Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quoting *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021)).

Bassett presents no proof (or even any argument) to support a showing of pretext here.  ROA.1131-1132.  Without dispute, Bassett twice used racially offensive language on-air, which led to her discharge. ROA.10, ROA.615.  Without dispute, Bassett's two on-air comments generated public complaints.  ROA.1130.  Without dispute, Bassett's supervisors determined her on-air comments were racially offensive.  ROA.329, ROA.415.  And without dispute, Bassett failed to show a similarly situated comparator—something she does not address it in her opening brief at all.  ROA.1131-1132.

As the district court correctly noted, Bassett did not produce any evidence that WLBT's reasons for Bassett's discharge were false or unworthy of credence. ROA.1130, ROA.1132, ROA.1136-1137, ROA.1142.  The district court correctly found that her claims cannot survive a pretext analysis.  ROA.1131-1132.

### C. Bassett Produced No Competent Evidence That Her Race Was a Motivating Factor in Her Termination.

Nor can Bassett survive summary judgment using the mixed-motive alternative.  For this approach, Bassett must offer evidence that her race "was a

motivating factor" for her termination.  *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99-101 (2003).  She failed to do so.  Bassett's failure to produce competent summary judgment evidence is again fatal to her claim at this stage.

First, Bassett claims WLBT admitted a discriminatory motive through the deposition testimony of Ted Fortenberry.  To support this claim, Bassett plucks an incomplete portion of Fortenberry's testimony and mischaracterizes it, an irresponsible attempt to mislead the Court.

Bassett claims Fortenberry testified that a black employee could have made the same "fo shizzle my nizzle" comment on air without repercussion.  This is incorrect and clearly refuted by reading Fortenberry's testimony.  ROA.1026-1027. Fortenberry responded to a general question in his deposition testimony, and then immediately clarified how it differed when applied to the specific context of this case.  ROA.1026-1027.  Specifically, his complete deposition testimony was:

Q.  All right.  Is it racist for Snoop Dog to use the term fo shizzle my nizzle?  Is that racist if he says it?

A.  Well, I don't know if it's - I know that there are things that some people can say that are not considered to be inappropriate based on who they are and their background compared to other people.  In today's world, that's the way it works.

Q.  Well, let's be more specific.  Do you mean by that that there's some things that black people can say that while people can't say?

A.  Absolutely.

Q. Okay. And so far as you know - I mean, you didn't even know what the phrase meant yourself at the time, but so far as you know now is it offensive or - is it something that black people can't say or is it just something that white people can't say.

A. I think it depends on the circumstances and the situation. It's certainly not something you want to say on the air whether you're black or white, on our television station for sure.

      \*\*\*

Q. It was your earlier testimony that there's some things that black people might be permitted to say, but white people would not be permitted to say that would be appropriate for blacks but not appropriate for whites; am I correct?

A. I made the statement that it doesn't matter if they're white or black, on our television station there are things they can't say regardless of their race.

ROA.1026-1027, ROA.1029.

Incredibly, Bassett argues the district court "incorrectly credited" the full version of Fortenberry's testimony. This could not be further from the truth. The district court plainly acknowledged Fortenberry's general statement regarding societal differences but noted "when asked specifically about statements by his on-air professionals, he said neither may say them." ROA.1134. And that is the pertinent point, context matters. ROA.1133.

Fortenberry was first asked a very general question outside the context of his on-air employees. ROA.1026. When speaking about permissible conduct for WLBT's on-air talent, however, he testified the comments Bassett made were

14

unacceptable for any anchor to say on-air, regardless of race.  ROA.1026-1027, ROA.1029.  Contrary to Bassett's suggestion that the district court failed to weigh the evidence in her favor, the district court simply refused to allow her to irresponsibly cherry-pick statements and mischaracterize them.  ROA.1133-1134.

Next, Bassett's attempt to show that the racially offensive terms she used on-air potentially have different meanings does not preclude summary judgment.  Her argument boils down to a classic dispute of "the underlying facts of an employer's decision," an argument this Court routinely rejects.  *LaMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Courts are not "human resources managers" and the inquiry here is not whether WLBT "made a wise or even correct decision to terminate" Bassett.  *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022).  Therefore, an employer's honest belief that an employee used offensive language is a legitimate non-discriminatory reason.  *See Bryan v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  "The focus of the pretext inquiry is not whether [WLBT's reason for termination] was accurate but whether [it] reasonably believed its non-discriminatory reason for discharging [Bassett] and then acted on that basis."  *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020).

Here, it is undisputed that both Jones and Fortenberry understood Bassett used racially offensive language twice, and they terminated her employment based on their understanding of the terms.  ROA.329, ROA.415, ROA.489-490.  Bassett is not entitled to have a jury second-guess WLBT's reasonable conclusions regarding the precise meaning of the terms she used, or any alternative meanings.  *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988).

As the district court noted, a similar issue was in play in *Anderson v. Office Depot, Inc.*, where the plaintiff was discharged for using the term "player," a term his employer considered offensive and racially derogatory. No. 3:08-cv-288-DPJ-JCS, 2009 WL 1116306, at *2-3 (S.D. Miss. Apr. 24, 2009).  The district court rejected the plaintiff's arguments regarding the meaning of the word "player" noting that: "there is no need to attempt a precise definition in the undisputed factual context of this case, because the employers' conclusion that [the word "player"] was offensive, even if faulty, does not demonstrate the Plaintiff was fired due to his race." *Id.* at *3 (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).  And this Court affirmed Judge Jordan's conclusion on appeal. *Anderson v. Office Depot Inc.*, 360 F. App'x 553 (5th Cir. 2010) ("The district court correctly ruled that whether the defendant discharged the plaintiff for using what could be a racial slur, of itself, was not evidence of defendant's discrimination.").

Even if, WLBT reached an incorrect conclusion about the meaning, that would not help Bassett's case. *See Bryant*, <u>413 F.3d at 478</u> ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones.") There is (for instance) no evidence that WLBT did not actually believe she used a racially offensive term. *See Jackson v. Cal-W. Pkg. Corp.*, <u>602 F.3d 374, 379</u> (5th Cir. 2010) ("[I]n cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but whether the employer reasonably believed the employee's allegation and acted on it in good faith.") (quotation marks omitted).

Whether or not there is an alternative race-neutral interpretation of the term "nizzle," it is undisputed that one meaning of the term is racially offensive. <u>ROA.329</u>, <u>ROA.415</u>, <u>ROA.489-490</u>. Without dispute WLBT received immediate complaints about Bassett's use of the term, and the decision-makers in her termination reached the conclusion that the term was racially offensive. <u>ROA.329</u>, <u>ROA.415</u>, <u>ROA.489-490</u>. Bassett is not entitled to a "judicial second-guessing" of WLBT's determination. *Bryant*, <u>413 F.3d at 478</u>.

Next, Bassett continues her efforts to create fact issues where none exist by arguing that Gray Media's training center is proof of a mixed motive. The training

center (which is operated by Gray Media to help prepare college students for careers in the television industry and is "totally separate" from the WLBT newsroom) was directed by Michael White, and it is undisputed he took no part in Bassett's termination. ROA.778-779. Because there is no evidence linking the existence of the training center to Bassett's termination, the Court need not engage with the argument since it is irrelevant to Bassett's claims. *See e.g. Lavigne v. Cajun Deep Founds., LLC*, 654 F. App'x 640, 647 (5th Cir. 2016) (quoting *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001)) (alternations in original) ("'[s]tatements of non[-]decision makers, or statements by decision makers unrelated to the decisional process itself [do not] suffice to satisfy the Plaintiff's burden' of showing discriminatory intent.") (alternations in original).

Bassett attempts to stretch this already thin (and irrelevant) evidence beyond its limits to support a wildly speculative assertion that a college internship program somehow influenced Fortenberry and Jones to consider Bassett's race when terminating her employment. Bassett's argument regarding WLBT's training center is, frankly, a distraction, and she fails to articulate how it has any bearing on the decision to discharge her beyond a baseless claim below that WLBT is "anti-white." ROA.1003.

Finally, Bassett's self-aggrandizing argument (at 33) that she was a "high-performing employee" is false and insufficient to save her from summary judgment.

ROA.1004.[4]   Fortenberry testified that Bassett did "an okay job" and that he had issues with her performance aside beyond her use of inappropriate language on air. ROA.311-312.   Fortenberry testified that Bassett "would use our professional television station social media sites to promote her individual businesses." ROA.311-312.   Charlie Jones likewise testified that Bassett was sometimes "[a] little less about the news and a little bit too much about the personality." ROA.385.   Most importantly, however, Bassett further overlooks the fact that she was already disciplined for using offensive language on air, and counseled that she needed to be cognizant of her on-air conduct.   ROA.185-186, ROA.298-299, ROA.321-322, ROA.393-395.   She displayed no remorse for her conduct or its effects, making the absurd claim that WLBT should have provided her with an exhaustive list of all the words she shouldn't say on live television, and that if the viewers don't like what she has to say, they can just "change the channel." ROA.195-196.   This is clearly not the behavior of a "high-performing employee" who did "nothing wrong." *See e.g. Sreeram v. Louisiana State University Medical*, 188 F.3d 314, 318 (5th Cir. 1999) (finding the plaintiff to not be qualified when "every doctor to evaluate [the

---

[4] Bassett's reliance on Ms. Wade-Dixon's opinion of her performance is also unwise and misplaced. Ms. Wade-Dixon, an African-American anchor who played no role in the termination decision, and describes herself as Bassett's friend, testified she did not believe Bassett made the "fo nizzle" comment with malice, but still believed Bassett should have been terminated because she understood that the anchor's job "is all about credibility and trust . . . and so many people had lost that trust" in Bassett following the on-air comment. ROA.737-738.

plaintiff] found that her performance as a surgeon was insufficient to allow her to continue in the program.").

An employer's "'incorrect belief that an employee's performance is inadequate constitutes a legitimate non-discriminatory reason' for termination." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471 (5th Cir. 2005) (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see also Id.* (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)) ("Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'").

Bassett has wholly failed to produce competent evidence to meet her burden and allow her to survive summary judgment.  The district court applied the correct standard, properly analyzed Bassett's claims under Fifth Circuit precedent, and reached the correct conclusion.  This Court should affirm the district court's order granting WLBT's motion for summary judgment as to all of Bassett's claims.

## CONCLUSION

For the foregoing reasons, Defendant-Appellee Gray Media Group, Incorporated d/b/a WLBT-TV respectfully requests that the Court affirm the judgment of the district court.

RESPECTFULLY SUBMITTED,

*/s/ M. Kimberly Hodges*
M. Kimberly Hodges (MS Bar No. 100276)
kim.hodges@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6410 Poplar Avenue, Suite300
Memphis, Tennessee 38119
Telephone: (901) 767-6160
Facsimile: (901) 767-7411

**ATTORNEYS FOR THE DEFENDANT-
APPELLEE GRAY MEDIA GROUP,
INCORPORATED D/B/A WLBT-TV**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellee's Brief has been served

on the following parties by filing the above with the Clerk of Court, utilizing this

Court's electronic filing system, which sent notice of such filing to:

> Jim Waide (waide@waidelaw.com)
> Rachel Pierce Waide (rpierce@waidelaw.com)
> Yance Falkner (yfalkner@waidelaw.com)
> WAIDE & ASSOCIATES, P.A.
> P.O. Box 1357
> Tupelo, MS 38802-1357
> Telephone: (662) 842-7324

**Attorneys for Plaintiff-Appellant**

This 14th day of November, 2025.

*/s/ M. Kimberly Hodges*
M. Kimberly Hodges

# FED. R. APP. P. - FORM 6
## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, it contains 4,581 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Microsoft Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Microsoft Word in Times New Roman 12-point font.

Respectfully submitted,

BY:   /s/ *M. Kimberly Hodges*
      M. Kimberly Hodges

Dated:  November 14th, 2025.